May it please the Court, Susan Lyons for the Secretary of Health and Human Services. I would like to reserve five minutes for rebuttal. There are a number of issues before the Court at this time. I would like to address first the issue raised by the Secretary on appeal, namely whether Loma Linda expressed dissatisfaction as required for board jurisdiction under 42 U.S.C. 1395-00A. A provider may appeal its notice of program reimbursement to the Provider Reimbursement Review Board, also referred to as the board or the PRB, if it meets three requirements. One of these requirements is that the provider must be dissatisfied with a final determination of the fiscal intermediary as to the amount of total program reimbursement due the provider for the items and services furnished to individuals during the cost reporting period. I'd like you to focus on the words total program reimbursement and what that means. What that – well, I'd like to focus, if I may, on final determination of the amount of total program reimbursement, which is what the statute actually says. All right. Well, it says both. It says a final determination of the intermediary as to the amount of total program It does not say a final determination as to the amount of each discrete item of cost. That's correct, but the final determination is a listing of discrete items of cost. That may well be, but it's a final determination of the total program reimbursement as to which the provider has to be disgruntled. But the reality of how the Medicare payment system works is that you don't have a monolithic total with which providers express dissatisfaction. You have a cost report which lists a number of different items, thousands of items, submitted to the fiscal intermediary. The FI looks at those items and comes up with the NPR, which is, again, a listing of the individual items. So when you get to total amount of program reimbursement, what you have is a number of different items that result in the total amount of program reimbursement. And this Court has not accepted providers' arguments that the phrase total amount of program reimbursement basically trumps the Secretary's statutory interpretation in the cost-reopening context in French Hospital. The cost-reopening context is different from this, whether it's totally distinguishable or not is a different question, I guess. But it is certainly different, because there you do reopen, at least according to what we've said, you reopen as to a discrete item. And you can't use the reopening as a hook to go back and revisit the original determination. That's correct, but in French Hospital, the providers in that case were arguing that this language here meant you could reopen everything, because they focus on total amount of program reimbursement. When you have a revised NPR, you do end up with a total amount of program reimbursement. And what the providers in French Hospital are arguing is that because you have this total amount in the revised NPR, you can go to all the aspects that make up that total. And this Court rejected that interpretation. The D.C. Circuit also rejected that interpretation, and I think the reasoning in the D.C. Circuit speaks to this issue here. This is the HCA Oklahoma case, 27F3D at 617. And when the D.C. Circuit looked at it, it said, one question is, where do you find this total amount of program reimbursement? And the Court said, the statute gives us no indication as to where the final determination of the amount of total program reimbursement is to be located. Part is obviously contained in the original NPR, and part, the remaining elements, are in the reopening decision. Then also, what do you do with subsection D, which says the board should have the power to make any additions or matters covered by a cost report, even though such matters were not considered by the intermediary? Well, as the Supreme Court recognized in Bethesda Hospital and this Court recognized in French Hospital, you do not even get to D unless you find dissatisfaction under A. So that's where it doesn't really add anything to the analysis to look at D. First, you have to decide whether or not A is issue-specific, and then if you find that the provider expressed dissatisfaction, then you can get to D. And it might be helpful if you want, I can give an example as to when D would come into play. Well, the thing is sort of simplistic. They were obviously dissatisfied with the determination of the intermediary because they appealed. Okay. Right? They were dissatisfied. They asked for a hearing. In a colloquial sense of what dissatisfaction means. Yeah. They were unhappy. They were unhappy. They didn't like it, so they appealed. So while that appeal was pending, they said, and there's another item as to which we are also now unhappy. And so under D, the Board says, yeah, we'll look at that because it's easy. Basically, there's no dispute as to the amount. Whatever. They goofed. It's clear that they should be awarded it. It's clear that Blue Cross ought to have picked up the mathematical error itself or the miscalculation itself. And so we'll modify or we'll accept another revision as we can do under D. What's wrong with that? Because there was not dissatisfaction under A. The language is ambiguous. It's ambiguous and Bethesda Hospital spoke to that ambiguity in this context. I don't understand where it's ambiguous with respect to issues. It nowhere says issues. It says dissatisfaction with the final determination. There's no quarrel with what Loma Linda was dissatisfied with, the original final determination, right? Right. Okay. So while that unhappiness is pending before the Board, the Board exercises the power given to it under D to consider further revisions. What's wrong with that? Because the way the Medicare system works, because you have this NPR, which is number of issues, because the total amount of program reimbursement is a result of the sum of these issues, that statutory language is ambiguous. And the Secretary interpreted that language in light of how the system works, in light of the DICTA and Bethesda Hospital, and reached the conclusion that it looks at an issue specific and that Loma Linda had not claimed dissatisfaction with this particular issue. The Secretary's interpretation was clearly reasonable. The Medicare system is a massive program, and it needs to be orderly. It needs to have deadlines. And these providers, as recognized by the Supreme Court in your home, are sophisticated. They have lawyers. They have consultants. The Secretary has regulations out there for them to refer to. The Secretary has reimbursement manuals for them to look at. What they are seeking to do here by trying to make their appeal to just one final total number is to get another bite at the apple. They had everything they needed. I mean, the Board has the power under the statute to modify, reverse, affirm, or consider revisions, whether or not the cost item was originally presented to the intermediary. So to give that clause, I mean, the Board doesn't have to entertain it. If it agrees with your position that this is just a game, the Board can say, wait a minute, that's a game we're not playing. But the Board here exercised its power to consider revisions and said, sure, this one's easy. The Board does not have the power if there was not dissatisfaction in the first place. And the Secretary's interpretation of the statute is that you do need issue-specific claims of dissatisfaction. I do not submit that the statutory language is ambiguous on this point. It's a final determination. And basically, the total amount of program reimbursement is the sum of parts. But if you say it's ambiguous, don't we look to the intent of Congress? And if we look at D, it seems to indicate to me that Congress did not favor an issue-by-issue exhaustion requirement. D does not go towards A. I mean, what Congress was saying in D was that if an issue gets up before the fiscal intermediary and the fiscal intermediary needs to make other revisions to the cost report in order to implement that issue, then Congress can do that. And I would like to go ahead and give an example that might clarify that a little bit. Number of bed days is an important statistic in Medicare payment system. It's important. It goes into the disproportionate share calculation, which has to do with whether a hospital should get more money for having a larger low-income patient. It also goes to indirect medical education. All else being equal, a hospital's better off if it has more bed days for disproportionate share purposes All else being equal, it's better off if it has less bed days for an IME. What D allows the Board to do, if somebody appeals the number of bed days for purposes of dish reimbursement, then under D, the FI can say, okay, we've changed the number of bed days here. Let's apply it over here for IME. So the Secretary's position is that D allows the Board to effectuate other changes resulting from the issue that it has jurisdiction over. Bethesda Hospital recognized two ways in which a provider can express dissatisfaction. It can claim a cost in its cost report and have it denied, or where the FI has no discretion, it can mount a legal challenge. In Bethesda Hospital, it was to a regulation. In Adams House, this Court expanded that to challenging a manual provision. This provider did neither. And this provider would have this Court think that the Bethesda Hospital dicta means nothing. The Secretary cannot believe that the Supreme Court would go to the, you know, trouble of putting about ten lines in its opinion that did not mean anything. Well, it does mean something, doesn't it, in the sense that we were just talking about? Because the Supreme Court doesn't say what your brief says it says, which is that you can't show dissatisfaction. What the Court said was that you, it might well show that the provider was satisfied. That's correct. It was giving guidance to the Secretary. Well, maybe. But why isn't that perfectly consistent with the notion that subsection D gives the Board the power, doesn't say it has to, but it gives it the power to consider revisions as to matters covered by a cost report, even though those matters were not considered by the intermediary in making a final determination? Because subsection D does not go to the Board jurisdiction. So you have to get to Board jurisdiction before you get to D. I understand that. But there's no question here the Board had jurisdiction. Well, we disagree with that. We think it's very clear. Well, it had jurisdiction, period. There's no issue as to that. Your quarrel is whether it had jurisdiction over the interest item. That's correct. But it did have jurisdiction over the request for hearing. Yes. It had jurisdiction over the initial appeal. Over the initial appeal to the NPR. And it had jurisdiction over the final determination. Yes or no? It did not have jurisdiction over this aspect of the final determination. Well, this aspect or the final determination. Did it have jurisdiction over the final determination? It had jurisdiction over the final NPR. Okay. Where do you get that out of the language of the statute? It's a final determination. As I mentioned before, the NPR. Just tell me where you get it in the language. I understand your policy arguments, why this is a crazy way to read it. But I'm just more basic. Where did you get the issue-oriented jurisdiction out of the statute? It says a provider must be dissatisfied with a final determination of the fiscal intermediary as to the amount of total program reimbursement. If the total program reimbursement ends up being a sum of a number of final determinations, then you can be looking at a final determination as meaning that you're looking at an issue specific. The court in Bethesda Hospital is assuming issue specific, or else it wouldn't have even gotten to the dicta. It was looking at whether or not the provider before had expressed dissatisfaction with that particular issue. Little Company of Mary, you look at the facts of those cases, the Seventh Circuit very clearly had cases before where there were other matters that were at issue. Well, I'd like to go back to the language that Judge Reimer asked you about also. I don't see how in the statutory language you get the issue determination. It says if the provider is dissatisfied with a final determination as to the amount of total program reimbursement due the provider. Now, where out of that do you get dissatisfied with a particular issue determination? The question is, what is the total amount of program reimbursement? It is a sum of all these different entities. Yes, it's a total sum. A total amount is a total sum. A collection of individual determinations is the total determination. And providers never appeal that total sum. In this particular case, under the regs, you have to show those items with which you are specifically dissatisfied. In this particular case, Loma Linda raised six issues, and it's in the original appeal. It didn't say I don't like a million dollars. It would be very easy to write the statute the way you suggest. You would say is dissatisfied with a final determination as to any item. That would be very easy to say. Instead, they said is dissatisfied with a final determination as to the amount of total program reimbursement. It sounds perfectly clear to me. It's not clear, as this Court found in looking at reopening. You cannot just look and say in the revised NPR context, we have a total amount of program reimbursement. Therefore, everything can be opened up. This Court recognized that that was too broad a reading of French Hospital and Anaheim. It should recognize that it's too broad a reading here in this context also. And I would, again, like to refer the Court to the – I have run out of time. Would you like me to address quickly the issues on Crossetville? Kennedy. You haven't run out of time yet. Well, I guess I've run out of the time I want to reserve. Oh. Would you like me to address quickly? You're reserving five minutes or four and a half minutes? Yeah. Actually, let me just look here quickly, see if there's anything else to say on this issue. I would like to stress that the Seventh Circuit's interpretation is the correct one. It used the Bethesda Hospital dicta. And the Third Circuit as well. Well, no. They accidentally looked at D instead of A. And just quickly on the Crossetville issues, because there's no final agency decision on the merits, the district court was correct to remand stipulation. CMS is not a party. It's not binding on CMS, not on the Secretary. And also, the terms of the stipulation itself doesn't bind even the PRB. And this is not in our briefs. But in Excerpts of Record 121, paragraph 15 starts, While the provider and the intermediary respectfully acknowledge that they cannot dictate to the PRB what its decision should be. Well, if you can't dictate to the Board, then you certainly can't dictate to the Secretary who's reviewing the Board's decision. And I'd like to say the Court should not consider the prevailing party issue since  And I reserve the rest of my time. Thank you. Thank you. Good morning, Your Honors. Lloyd Bookman on behalf of Loma Linda University Medical Center. I'd like to first address the question of PRB jurisdiction, and then, time permitting, spend a few minutes on the question of the disposition of this matter. The issue of PRB jurisdiction, in our view, is a simple matter of statutory interpretation that starts and largely ends with the plain language of the statute, 1395.00a. Under 1395.00a, a provider may obtain a PRB hearing with respect to a cost report that the provider has filed. That's the starting language. So that tells us that the thing over which the PRB has jurisdiction when a provider submits an appropriate appeal is an entire cost report. Congress could have said a provider may obtain a hearing with respect to an aspect of a cost report, to a cost, to an issue, but it did not. It said a provider may obtain a hearing with respect to a cost report. Again, the entirety of the cost report, therefore, is before the Provider Reimbursement Review Board once an appeal is appropriately filed. Section 1395.00a.1 sets forth the prerequisites for obtaining PRB jurisdiction, and the first prerequisite is the dissatisfaction criteria that we've been talking about today. Under the dissatisfaction criteria, as your questioning pointed out, the question is whether the provider is satisfied with the final determination of the fiscal intermediary as to the total amount of program reimbursement due to the provider for the fiscal period covered by the cost report. That, as much as the Secretary would like to argue that that language contains some ambiguity that would enable the Court to defer to the Secretary of Interpretation, that language is clear, Your Honors. What do you do with Bethesda? The dicta in Bethesda seems to indicate that the statute is ambiguous when it comes to whether a provider who is – who inadvertently admits a request for reimbursement can be dissatisfied. What do you do with that? Well, the question is dicta, but secondly, and more importantly, I think as Judge Reimer's questioning pointed out, the statute – perhaps it was yours – the language in Bethesda says a provider that fails to claim a cost that it could otherwise claim might have established that it is not dissatisfied. It uses the word might. That means that, obviously, if a provider might not be – might be satisfied if it fails to claim a cost, well, the provider also might still be dissatisfied with the final determination. The Supreme Court nowhere in Bethesda says that a provider who fails to claim a cost which it could have claimed is – has given an example that the provider is automatically satisfied with everything in the cost report. That's not what Bethesda said. Bethesda also is not dealing with a situation, doesn't even attempt to address a situation, in which a provider appeals a final determination, lists specific aspects of that determination with which it is dissatisfied, including aspects that had been included in the cost report, disallowed by the fiscal intermediary, and then the provider seeks, once the PRB now has jurisdiction over this appeal of the final determination, wants to add a new issue relating to something the provider didn't claim. That wasn't before the court at all in Bethesda. I mean the court at all in Bethesda. That's a completely different situation than Bethesda was looking at. Here, we have an appeal that was perfected because the provider disagreed with the final determination of the total amount of reimbursement. Once that appeal is perfected, the provider has established that it is not satisfied, and therefore, the PRB, as we'll discuss in a moment under D, has broad authority with respect to the cost report. One of the probably most compelling arguments that the Secretary makes, just as a matter of kind of policy to a certain extent of statutory structure, is that to read the statute as you do allows for gamesmanship, allows for skirting the time limits on filing and or seeking a hearing in the board, and skirts the provisions for reopening of a final determination. What's your? There is undoubtedly a policy on one side that says let's bring this matter to a conclusion. There should be finality. There should be a narrowing of issues. That's a legitimate policy that Congress could pursue, that the Secretary could pursue, if Congress's statutes would have allowed the Secretary to pursue it. That's one policy. There's another policy that says once a cost report is before the board, it is by definition no longer final because it is in play. It's still in front of the board, and therefore, we want the reimbursement determination to be correct once that cost report is before the board. So we have two admittedly, two different policies that are sometimes admittedly in conflict. One, let's bring this thing to a conclusion. The other, let's get it right. Once the cost report is in play, Congress made a choice. And the choice Congress made is once the cost report is before the board, the board now has plenary jurisdiction over that cost report to get it right, to get the reimbursement computation right. Congress could have chosen something different. Congress could have chosen to do it the way the Secretary is suggesting. That's not what Congress chose. So, yes, it does lead to gamesmanship. Let me address that part of your question, Your Honor. No. Provide — I mean, we're 22 years later here. You know, we're dealing with services rendered in the fiscal year, July 1, 1984, through June 30, 1985. Loma Linda certainly had no motivation to forget to claim the interest expense. We're here 22 years later, and Loma Linda is now still attempting to get reimbursed for that interest expense. Loma Linda would have been much better off if it had included the cost in the cost report and gotten those costs reimbursed. There is no motive to play a game. The motive that a provider has is to include all properly claimable costs in its cost report. But Congress has allowed the system to be sufficiently flexible to allow someone in Loma Linda's position who made a mistake and realizes, while the cost report is still in play, to raise that issue with the board and gave the board the authority to deal with that issue. Let me turn for a moment to OOD. Once we get through OOA, which allows a provider to obtain the jurisdiction once it's dissatisfied with the total amount of reimbursement, which Loma Linda was, filed its PL expressing dissatisfaction, D tells us what the scope of that authority is. And under D, a provider, excuse me, the board, has the authority to consider any matter covered by the cost report, even a matter not included in the intermediary's final determination. That's extremely broad language, giving the broad or very broad powers to the board. Bethesda tells us that a matter covered by a cost report, excuse me, includes any cost incurred during the period covered by the cost report, whether or not claimed. That's what Bethesda says. The interest expense here was incurred by this provider, by Loma Linda, during its 1985 cost reporting period. It is, therefore, a matter covered by Loma Linda's 1985 cost report. Accordingly, the board has the authority, once it obtains jurisdiction over A, to consider that issue. And that's what the board quite properly did in this case. Section 30, OOD, also informs, as it did in Bethesda, informs the interpretation of OOA. The breadth of D, allowing considerations of any matters covered by a cost report, even though not considered by the fiscal intermediary, tells us that A is not issue specific. The statute should be read as a whole, as the Supreme Court did in Bethesda, as this Court did in Adams House, and that tells us that A is broad. A is not issue specific. A is estimate total. I'll spend a minute talking about French Hospital. French Hospital, which counsel spoke of in support of her position, French Hospital is a reopening case, excuse me, where the provider was seeking to appeal a revised NPR and is seeking to appeal anything that other items in the cost report that were not involved in the revised notice of program reimbursement. This Court held that the revised NPR appeal was a revised NPR in a reopening was a creature of the board's, excuse me, of the Secretary's regulations, and not of Congress, and that, to a large extent, the jurisdiction of the PRRB with respect to revised determinations are creatures of regulation, not creatures of 1395aa and 00d. They're creatures of the Secretary's regulations. And at French Hospital, the Court relied heavily on those regulations to decide that an appeal from a revised NPR is limited to the issues presented by the revised NPR. The Court in French Hospital says that this is in contrast to initial NPRs. It makes that specific point and says that initial NPRs are subject to broad the board has broad authority to consider initial NPRs. So that initial NPR and revised NPR are two completely different things. Let me spend a couple of minutes, Your Honors, talking about what the remedy should be, what the disposition should be should the Court agree with the provider that there is PRRB jurisdiction of this case over the interest expense issue. There is a stipulation in this case, as Your Honors know, between the provider and the fiscal intermediary, which says that the interest expense that Norma Linda is contesting is allowable. The stipulation goes to the final issue presented by this case. The fact that there is a stipulation does not necessarily mean that the Secretary would buy it. The Secretary has no choice in our view, Your Honor. Let me explain. The fiscal intermediary is an agent of the Secretary. The regulations make it clear that fiscal intermediaries are authorized to enter into stipulations at the PRRB. The regulations first say that it is the intermediary, not the Secretary, not CMS, who is the party to the PRRB hearing. The Secretary could have said the Secretary or the Centers for Medicare and Medicaid Services will be the party. The regs don't say that. They say it's the fiscal intermediary. The regulations then say fiscal intermediaries should not only, not just can, but should enter into stipulations to resolve issues. That's the Secretary's agent, the fiscal intermediary, acting within the clear scope of its authority, entered into a stipulation that the costs are to issue are allowable. It's the same as if the Secretary entered into that very stipulation. The Secretary cannot at this point say, oops, we don't like what our agent did. The board could have, but the Secretary could not. The board couldn't have either. I thought the stipulation itself recognized that the board could have. The stipulation has some – I don't have it in front of me, Your Honor, but the stipulation Well, it says while the provider and the intermediary respectfully acknowledge they cannot dictate to the PRRB what its decision should be, the mutual expectation is that the PRRB will issue a written decision in favor of the provider based upon the stipulation. Understand the language. That language is loose, and I would say unfortunate. The – where the intermediary and the provider stipulate that the costs at issue are allowable in clear – in clear language, the intermediary is acting, again, on behalf of the Secretary as the Secretary's agent. The intermediary is, therefore, binding the Secretary. I understand the language that you're reading. Let's back off of that for a second and just go to just a kind of a straightforward principle of administrative law and judicial review, and that is that we can't – we don't have it unless there is – we don't have jurisdiction for judicial review if, in fact, there's no final agency determination, which there isn't. That's the question. Is there a final agency determination? If – well, if the provider had a stipulation with the Secretary's name on it and not the intermediary's name on it that said these costs are allowable, but the Secretary had decided there was no jurisdiction of the PRRB and we were before the Court, I would think we would be able to argue convincingly that there is nothing left, that the decision has, in fact, been made. This is not a case in which a decision has not been made on the merits, even though the Secretary would like to say no decision has been made, that the decision has been made by virtue of the stipulation, by virtue of the Secretary's agent agreeing as to the final result. So we would – I would argue that there is a final decision, even though it's the Secretary would protest that the Secretary has not made one. The Secretary, through the Secretary's agent, has made that final decision, and therefore, this Court has jurisdiction to decide whether the PRRB had jurisdiction, but once it makes that decision, there's nothing left of the case. That's my argument, Your Honor. Absent that, if this Court chooses to send the case back to the PRRB, as the district court did, then we would ask the Court to consider the question of whether we're a prevailing party entitled to interest. We think we meet the definition of a prevailing party, particularly under these circumstances where we have a stipulation as to the substance. And unless Your Honors have any further questions, I will conclude. Thank you. Thank you, counsel. At this point, I just want to make one point on dissatisfaction, unless you have further questions, in that the French hospital, which was opposed Bethesda's decision, said that subsection D has nothing to do with A. So you do not look at D when you're interpreting A. It's only once there is jurisdiction under A. Going towards the second issue, Illinois counsel makes it clear that all aspects of a decision have to be channeled through the agency. Here, the administrator vacated the board decision and did not reach the merits. The district court had no jurisdiction, therefore, on that issue. Mr. Bookman argues that for this purpose, the intermediary is the agent of the Secretary, and that should matter. Frankly, I think the point he made about that stipulation being a final agency decision is, for lack of a better word, a little bit crazy. I mean, why would you have a final? There would be no reason to go to the board if you had a final agency decision in the form of a stipulation. There is a number of cases out there, and we cited them in our briefs, showing that the Secretary is not bound by actions of the fiscal intermediary. The fiscal intermediary is an agent of the Secretary, and therefore, it's bound by the Secretary's policy, but it does not work in reverse. You have the Crawford County case. You have Howard Young Medical Center and the Seventh Circuit. And again, the language of this particular stipulation does not even bind the board. It can't bind the Secretary. And I don't think I addressed the prevailing party issue. For us, that wasn't raised before. It shouldn't be raised on appeal. In any event, the cases cited by Mr. Bookman are cases where you have some kind of merits determination in front of the district court at that time, maybe a Social Security case where the Social Security ALJ didn't take everything into consideration that they should have. So there's some finding on the merits that then goes down, and therefore, those cases are completely inapplicable here. And, you know, we didn't reach the issue of whether or not the administrator waived her right to review the board's findings on jurisdiction. I would submit that's just like when you have a motion to dismiss in district court, and it's denied. You wait until you get a decision on the merits and take the whole thing up to the appellate court. There's no reason for any kind of interlocutory review. In this case, the board incorporated its board jurisdictional decisions in its final decision, and the administrator reviewed those within 60 days as required under 405-1871. Ginsburg. Let me just ask you. You cited the French hospital. Were you referring to footnote 9 of that case that said, we make clear that 1395-00D not only does not expand PRB's jurisdiction, it has nothing whatsoever to do with PRB jurisdiction? McGill. That's correct. That's what I'm referring to. And, again, I would just ask this Court to please look at the reasoning in the Little Company numeric cases. It's clear that this provider did not meet the dissatisfaction requirement with respect to its interest expense claim. The dicta instructed the Secretary on that when the administrator issued her decision, and the administrator's decision is clearly reasonable in light of the proud of the program works. We submit that the statutory language is ambiguous when it comes to what a final determination of total amount of program reimbursement is, and in light of the dicta in Bethesda Hospital. Thank you, Jensen. Case disargued will be submitted.
judges: D.W. Nelson, Reinhardt, Rymer